Mr. Fred O. Dickinson, III Executive Director Florida Department of Highway Safety and Motor Vehicles Neil Kirkman Building Tallahassee, Florida 32399-0500
Dear Mr. Dickinson:
You ask the following question:
Is the machine, AP 2100 Decal Applicator/Printer, or a similar device, an "automated vending facility" as that term is used in section 320.04(1)(a), Florida Statutes, authorizing a $1 service charge for issuance of motor vehicle license plate validation stickers and mobile home stickers from such a facility?
In sum:
The AP 2100 Decal Applicator/Printer, or a similar device, when equipped with a debit or credit card scanner allowing individuals to obtain license plate validation stickers by self-service, would be an "automated vending facility" for purposes of collecting the $1 service charge authorized by section 320.04(1)(a), Florida Statutes.
The Department of Highway Safety and Motor Vehicles (department) has become aware of an automated device, the AP 2100 Decal Applicator/Printer, that prints stickers and registrations on demand when vehicle and registrant data is entered. This device, or one similar to it, could replace the present method by which registration stickers are printed under contract on a yearly basis, with rolls of preprinted stickers supplied to tax collectors as agents of the department.
Under the present system, tax collectors must inventory and securely store the stickers. Dispensing stickers manually necessitates that a clerk note each sticker's number for inventory purposes and staple the sticker to the registration certificate. The apparent shortcomings of the present system are highlighted by the convenience, security and efficiency afforded by the AP 2100 or a similar device.
The AP 2100 may be operated by a registration clerk for in-person or mail renewals, or it can be equipped with a credit or debit card reader for use as a self-service unit. You indicate it is not clear to the department, however, whether this unit, or a similar device, would be considered an "automated vending facility" for purposes of collecting the $1 service charge allowed by section320.04(1)(a), Florida Statutes.
Section 320.06(1), Florida Statutes (1996 Supplement), requires a validation sticker for each motor vehicle registration plate issued and a new sticker each year upon renewal. Pursuant to section 320.04(1)(a), Florida Statutes:
"There may also be a service charge of up to $1 for the issuance of each license plate validation sticker and mobile home sticker issued from an automated vending facility which shall be payable to and retained by the department to provide for automated vending facilities or machines used to dispense such stickers in each tax collector's or license tag agent's office."
There is no statutory definition of the term "automated vending facility" in Chapter 320, Florida Statutes. Thus, the question arises whether the AP 2100, or a similar device, if used in an office where a clerk enters the information and dispenses the validation sticker rather than as a self-service unit, would not be characterized as an "automated vending facility" for purposes of section 320.04(1)(a), Florida Statutes.
Absent a statutory definition of "automated vending facility," the term must be given its plain and ordinary meaning.[1] While the phrase appears to be a term of art that has not been readily defined as such, a meaning can be gleaned from defining its elemental parts in the context of a common-sense application to the facts at hand. To "automate" is "to operate by automation: mechanize through automation: convert to largely automatic operation."[2] A definition for "vending" is derived from "vend," defined as "to transfer to another for a pecuniary equivalent."[3]
The term "facility," in a broader context, means "something that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end."[4]
Use of the term "automated vending facility" would appear to contemplate a mechanized, automated operation whereby goods or services are transferred to an individual with no need for human interaction or personal input on behalf of the one who is providing the goods or services at the time they are delivered.[5]
The AP 2100, or a similar device, when equipped with a credit or debit card reader for self-service operation, would clearly fall within the definition of an "automated vending facility." However, when the machine is operated by a registration clerk for in-person or mail renewals, with the clerk handling the transaction by inputting pertinent information, accepting fees and dispensing the sticker once it has been processed by the AP 2100, or a similar device, the procedure loses its "automated vending" character and operates more as a piece of office machinery for the convenience of office personnel.
Accordingly, it is my opinion that the AP 2100, or a similar device, when equipped with a debit or credit card scanner for self-service operation, would be an "automated vending facility" for purposes of collecting the $1 service charge authorized by section 320.04(1)(a), Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, Florida Birth-Related Neurological Injury CompensationAssociation v. Florida Division of Administrative Hearings,686 So.2d 1349, 1354 (Fla. 1997) (where Legislature has not defined words used in a phrase, the language should usually be given its plain and ordinary meaning).
[2] Webster's Third New International Dictionary 148 (unabridged ed. 1981).
[3] Id. at 2539.
[4] Webster's Third New International Dictionary 812 (unabridged ed. 1981).
[5] Cf., s. 212.0515(1)(a), Fla. Stat. (1996 Supp.), defining "[v]ending machine" as "a machine, operated by coin, currency, credit card, slug, token, coupon, or similar device, which dispenses food or beverage items," and s. 877.08(1), Fla. Stat., stating:
"A `coin-operated vending machine' or `parking meter,' for the purposes of this act, is defined to be any machine, contrivance, or device that is adapted for use in such a way that, as the result of the insertion of any piece of money, coin, or other object, the machine, contrivance, parking meter, or device is caused to operate or may be operated and by reason of such operation the user may become entitled to receive any food, drink, telephone or telegraph service, insurance protection, parking privilege or any other personal property, service, protection, right or privilege of any kind or nature whatsoever."
And see, Op. Att'y Gen. Fla. 95-74 (1995), in which this office concluded that coin-operated public telephones were vending machines for the purpose of collecting commissions to be deposited into the Department of Highway Safety and Motor Vehicles employee benefit fund established pursuant to s. 112.217, Fla. Stat.